Filed 12/9/20  P. v. Howell CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RONNIE EARL HOWELL,<br><br>Defendant and Appellant. | F078070<br><br>(Super. Ct. No. F18902159)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jon N. Kapetan, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

The trial court suspended criminal proceedings after declaring a doubt as to defendant Ronnie Earl Howell's mental competence to stand trial under Penal Code

section 1368. (Undesignated statutory references are to the Penal Code.) It later ordered defendant to be committed to the State Department of State Hospitals pursuant to section 1370 and issued an order authorizing the treatment facility to involuntarily administer defendant antipsychotic medication. Defendant asserts insufficient evidence supports the trial court's order authorizing involuntary administration of antipsychotic medication. He further contends his maximum term of commitment for the restoration of his competency should be reduced from three years to two pursuant to Senate Bill No. 1187 (2017–2018 Reg. Sess.) (Senate Bill 1187). Finally, he argues he is entitled to a remand based on erroneous identifying information in the section 1368 report the trial court relied upon to find defendant incompetent.

We reverse the court's order authorizing involuntary administration of antipsychotic medication to defendant and remand for further proceedings consistent with this opinion. In all other respects, we affirm the order of commitment.

## FACTUAL BACKGROUND

Defendant was charged with grand theft of personal property and two counts of second degree commercial burglary along with various enhancements and priors. Before arraignment, defense counsel raised a doubt as to defendant's competency pursuant to section 1368. The court suspended the proceedings and ordered a doctor to meet with and evaluate defendant and to prepare a report pursuant to section 1368.

Dr. Paula J. Willis did a competency evaluation of defendant pursuant to section 1368. Based on her evaluation, Dr. Willis prepared a May 14, 2018, report to the court in which she stated her diagnostic impression of defendant as on the "[s]chizophrenia spectrum." She concluded defendant "has overt paranoid delusions laden with conspiracy themes, related to his case and involving the Police and 'alleged victim.'" According to Dr. Willis, defendant "remained fixated on these delusions, which [have] been impinging on his ability to proceed on [*sic*] the court process." She noted, defendant "is compliant with his present medication regimen, but he is not receiving an

2.

antipsychotic medication which is required for the treatment of his distorted and paranoid thoughts." She noted defendant had been at Atascadero State Hospital twice for restoration of competency, but the same effective medication regimen may not have been continued once he returned to the jail. She recommended defendant continue with his present psychiatric regimen and "receive an effective antipsychotic medication." Finally, she concluded defendant lacked the present ability to assist his counsel in his own defense and his delusions prevented him from effectively participating in the court process. Accordingly, Dr. Willis opined defendant should be found incompetent to proceed in the court process at that time. The matter was subsequently referred to forensic mental health and the court ordered a report and recommendation to be prepared pursuant to section 1370.

Community Program Director Shannon Parkinson, LCSW, interviewed and evaluated defendant for placement pursuant to section 1370, subdivision (a)(2) and documented her evaluation, conclusions, and recommendations in a July 2, 2018, report to the court. She noted, during the interview with defendant, his "thoughts were clearly disorganized with paranoid preoccupations," and "he would often become tangential jumping from topic to topic incoherently." Defendant "nervously rocked back and forth at times and became tearful towards the end of the interview. He endorsed active psychotic symptoms which included audio and visual hallucinations, and paranoid and persecutory ideations."

Parkinson concluded, "At this time, [defendant] would not be a good candidate for restoration of competency in the community as he appears to be actively psychotic and behaviorally unstable. He endorses active psychotic symptoms which include audio/visual hallucinations. He minimizes his substance abuse history and need for treatment and would likely risk the chance of relapse while in the community. It is also of great concern his risk of going AWOL from outpatient treatment as he has endorsed wishing to flee the area." According to Parkinson, defendant "requires an intensive

3.

inpatient treatment program for restoration of competency such as offered by the Department of State Hospitals.  There he would receive treatment for his mental illness, including psychotropic medication, and be able to receive competency training in a secure and structured environment."  Parkinson recommended defendant "be referred to the California Department of State Hospitals … in order to receive competency training in a locked forensic setting that has the necessary psychiatric interventions to restore him to competency while also providing the high level of structure and support he requires." (Underscoring & boldface omitted.)  Parkinson reminded the court it must indicate in its minute order whether involuntary antipsychotic medication is necessary and to provide authority for the state hospital to administer medications deemed appropriate, or that defendant may choose to either accept or refuse antipsychotic medication as part of his treatment.

On July 5, 2018, based on the forensic mental health report, the court ordered defendant to be committed to the State Department of State Hospitals with no specific designation.  It further held on the record that defendant "may choose to either accept or refuse antipsychotic medication as part of the treatment."

However, a July 5, 2018, criminal minute order attachment issued that stated defendant did not have the capacity to consent to antipsychotic medication, his mental disorder requires treatment with antipsychotic medication, and if it is not treated, it is probable that serious harm to defendant's physical or mental health will result.  The order then indicates: "The Court authorizes the treatment facility to voluntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist, for the following reasons," with the subsequent lines left blank.  The order also lists defendant's maximum term of commitment as 15 years 8 months, noting it exceeds three years.  It provided actual time credit for 97 days.

A separate "Order for Commitment and Delivery to State Department of State Hospitals" dated July 17, 2018, and signed by a judge, provides that the court found

4.

defendant to be mentally incompetent within the meaning of section 1370 on June 4, 2018, and, on July 5, 2018, determined "that the defendant lacks the capacity to consent to make decisions regarding antipsychotic medication." Accordingly, the order authorized the "treatment facility to involuntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist."

## DISCUSSION

### I. Court Order Permitting Involuntary Administration of Medication Must Be Reversed

Defendant first contends the court's order authorizing the involuntary administration of antipsychotic medication is not supported by substantial evidence. We agree.

#### A. Standard of Review and Applicable Law

A defendant has a "significant" constitutionally protected "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." (*Washington v. Harper* (1990) 494 U.S. 210, 221–222; see *Sell v. United States* (2003) 539 U.S. 166, 178 (*Sell*); *People v. McDuffie* (2006) 144 Cal.App.4th 880, 886; *People v. O'Dell* (2005) 126 Cal.App.4th 562, 568– 569.) This same interest is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*In re Qawi* (2004) 32 Cal.4th 1, 14; see *People v. McDuffie*, *supra*, at pp. 886–887.)

The United States Supreme Court has held the government can involuntarily medicate a mentally ill criminal defendant in order to render him or her competent to stand trial only if four factors are present. (*Sell*, *supra*, 539 U.S. at p. 180.) First, *important* governmental interests must be at stake. (*Ibid.*) Bringing an individual accused of a serious crime to trial is important, but courts must consider the individual case. (*Ibid.*) Second, the court must conclude that involuntary medication will *significantly further* the concomitant state interests of timely prosecution and a fair trial.

5.

(*Id*. at p. 181.) The court must find that administration of drugs "is substantially likely to render the defendant competent to stand trial" and "must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." (*Ibid*.) Third, the court must conclude involuntary medication is *necessary* to further those interests. (*Ibid*.) The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. (*Ibid*.) And the court must consider less intrusive means for administering drugs. (*Ibid*.) Fourth, the court must conclude administration of the drugs is *medically appropriate*, i.e., in the patient's best interest given his or her medical condition. (*Ibid*.) "The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." (*Ibid*.) "A court need not consider whether to allow forced medication [to render a defendant competent to stand trial], if forced medication is warranted for a *different* purpose, such as … the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." (*Sell*, at pp. 181–182.)

These constitutional requirements have been codified by our Legislature in the Penal Code. (§ 1370, subd. (a)(2)(B); see *People v. O'Dell*, *supra*, 126 Cal.App.4th at p. 569.) Under California law, prior to making an order directing that a defendant be committed to a treatment facility or placed on outpatient status, "[t]he court shall hear and determine whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication." (§ 1370, subd. (a)(2)(B).) If the court determines that the defendant is able to make decisions about medication and the defendant consents, then "the court order of commitment shall include confirmation that antipsychotic medication may be given to the defendant as prescribed by a treating psychiatrist pursuant to the defendant's consent." (§ 1370, subd. (a)(2)(B)(iv).)

If the defendant does not consent, the commitment order must direct the treating psychiatrist to determine whether antipsychotic medication is medically necessary and appropriate and to "make efforts to obtain informed consent from the defendant for antipsychotic medication." (§ 1370, subd. (a)(2)(C); see *id.*, subd. (a)(2)(B)(v).) If, after this process, the defendant still does not consent and the treating psychiatrist is of the opinion that the defendant lacks capacity to make decisions regarding antipsychotic medication, the treating psychiatrist must certify his or her assessment of the current mental status of the defendant and his or her opinion that involuntary antipsychotic medication has become medically necessary and appropriate. (§ 1370, subd. (a)(2)(C).) "[T]he defendant shall be returned to court for a hearing … regarding whether antipsychotic medication shall be administered involuntarily." (§ 1370, subd. (a)(2)(B)(v).)

Section 1370 requires the court to hear and determine, before commitment, if an order authorizing involuntary medication is necessary. (§ 1370, subd. (a)(2)(B)(i)(I)–(III).) If the court finds one of the following three circumstances to be true, it must issue an order authorizing involuntary administration of antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist at the facility housing defendant for restoration of competency: (1) the defendant lacks the capacity to make decisions regarding antipsychotic medication, his mental disorder requires medical treatment with antipsychotic medication, and without medication "it is probable that serious harm to the physical or mental health of the patient will result" (*id.*, subd. (a)(2)(B)(i)(I)); (2) the defendant is a danger to others, in that the defendant inflicted, attempted or threatened to inflict substantial physical harm on another while in custody, or the defendant was taken into custody for inflicting, or attempting or threatening to inflict substantial physical harm on another, and the defendant presents, as a result of a mental disorder or defect, a "demonstrated danger of inflicting substantial physical harm on others" (*id.*, subd. (a)(2)(B)(i)(II)); or (3) the People have charged the defendant with

7.

a "serious crime against the person or property," involuntary administration of antipsychotic medication is "substantially likely" to restore defendant's competence and is unlikely to have side effects that interfere with the defendant's competence, less intrusive measures are unlikely to have substantially the same results, and the medication is in the defendant's best interest in light of his or her medical condition (§ 1370, subd. (a)(2)(B)(i)(III)).

We review a trial court's order authorizing the involuntary administration of antipsychotic medication under the substantial evidence standard of review. (*People v. McDuffie*, *supra*, 144 Cal.App.4th at p. 887; *People v. O'Dell*, *supra*, 126 Cal.App.4th at p. 570.)

### B.     Analysis

Defendant contends the commitment order authorizing the involuntary administration of antipsychotic medication is at odds with the court's oral pronouncement that defendant could choose to accept or refuse antipsychotic medication while committed for competency restoration. He further notes no hearing was conducted on the issue of involuntary administration of medication. Accordingly, the order was not supported by substantial evidence and violated his due process rights. The People agree the trial court's order authorizing the administration of involuntary antipsychotic medication is not supported by substantial evidence. However, they request the matter be remanded to the trial court for a further hearing on the issue. We, too, agree the order authorizing involuntary administration of antipsychotic medication is not supported by substantial evidence; accordingly, it must be reversed, and the issue remanded to the trial court for further proceedings if necessary.

> "Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to his or her physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that a defendant has a

8.

diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant." (§ 1370, subd. (a)(2)(B)(i)(I).)

The record does not reflect the requisite elements necessary to support an order permitting the involuntary administration of antipsychotic medications. That is, there is insufficient evidence defendant lacked the capacity to make decisions regarding antipsychotic medication, and without medication "it is probable that serious harm to the physical or mental health of the patient will result" (as the court's order proclaims), or that other qualifying circumstances are present to warrant the involuntary administration of antipsychotic medication. While Dr. Willis opined an antipsychotic medication is required for treatment of defendant's distorted and paranoid thoughts, she also noted defendant was "compliant" with his medication regimen. Parkinson also recommended defendant receive "treatment for his mental illness, including psychotropic medication, and be able to receive competency training in a secure and structured environment" in an inpatient program. However, neither Dr. Willis nor Parkinson opined that defendant lacked the capacity to make decisions regarding antipsychotic medication, that without medication "it is probable that serious harm to the physical or mental health of the patient will result," or that defendant's condition was "substantially deteriorating." (See § 1370, subd. (a)(2)(B)(i)(I).) It is not enough that the reports reflect defendant has a diagnosed mental disorder. (See *ibid.*) And, notably, at the placement hearing, the trial court held defendant "may choose to either accept or refuse antipsychotic medication as part of the treatment," which is at odds with the court's subsequent written order indicating defendant lacked the capacity to consent.

The evidence also does not establish that involuntary administration of antipsychotic medication is "substantially likely" to restore defendant's competence and is unlikely to have side effects that interfere with the defendant's competence, less intrusive measures are unlikely to have substantially the same results, and the medication is in the defendant's best interest in light of his or her medical condition. Furthermore,

9.

neither Dr. Willis nor Parkinson identified the medication recommended to treat defendant's condition or discussed alternatives for treatment. Thus, the record lacks the showing required to permit the involuntary administration of medication.

Accordingly, we reverse the court's order authorizing involuntary administration of antipsychotic medication on this basis. Pursuant to section 1370, subdivision (a)(2)(B), before ordering a defendant committed to a treatment facility, the court is required to hear and determine whether defendant lacks the capacity to make decisions regarding antipsychotic medication and whether any of the conditions authorizing involuntary administration of antipsychotic medication to defendant are found to be true. (*Ibid*.) Because the record does not sufficiently establish the court made the requisite findings in its commitment order, we remand for further proceedings.

## II. Defendant's Challenge to His Maximum Commitment Term Is Not Ripe for Review

Effective January 1, 2019, Senate Bill 1187 reduced the maximum term of commitment for purposes of restoring a defendant's mental competency from three years to two years (see Stats. 2018, ch. 1008, § 2), at which point the defendant is to be "returned to the committing court" (§ 1370.1, subd. (c)(1)(A)). Defendant contends the enactment of Senate Bill 1187 requires his maximum commitment term for restoration of competency to be reduced from three years to two. We decline to address his contention on the present record on appeal.

### A. Standard of Review and Applicable Law

In *Jackson v. Indiana* (1972) 406 U.S. 715, 731–739, the United States Supreme Court considered whether the equal protection and due process provisions of the Fourteenth Amendment to the United States Constitution allow a state to commit on an indefinite basis a criminal defendant found incompetent to stand trial. The *Jackson* court held "that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable

period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." (*Jackson*, at p. 738.)

The California Supreme Court adopted the same rule the following year in *In re Davis* (1973) 8 Cal.3d 798, in which it held "that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future." (*Id.* at p. 801.) The *Jackson* and *Davis* courts both noted that a defendant who has been found incompetent to stand trial and will not regain competency "in the foreseeable future" must either be released or committed under an alternative procedure. (*Jackson v. Indiana*, *supra*, 406 U.S. at p. 738; *Davis*, *supra*, at p. 801.)

The California Legislature subsequently codified a three-year maximum term of commitment for purposes of restoring a defendant's competency in sections 1370, subdivision (c)(1), and 1370.1, subdivision (c)(1)(A). (Stats. 1977, ch. 695, § 5.) If, at the end of the maximum period of commitment the defendant has not recovered mental competence, the defendant shall be returned to the committing court. (§ 1370, subd. (c)(1).) Additionally, if the medical staff determines there is no substantial likelihood the defendant will regain mental competence in the foreseeable future, the defendant must be returned to the court for further proceedings. (§ 1370, subd. (b).)

### B. Analysis

Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), defendant asserts Senate Bill 1187 applies retroactively and, accordingly, his maximum term of commitment should be reduced to two years. Citing the legislative history of the bill, defendant contends the bill's passage was based on "'an urgent need to reform California's competency commitment scheme to ensure that state resources are used wisely, fairly, and in accordance with constitutional guarantees of equal protection and due process.'"

11.

Defendant concedes his "commitment is obviously not a criminal sentence and thus on its face, *Estrada* does not directly apply." But he contends, "[t]he spirit of *Estrada*, when read in light of the legislative history of Senate Bill 1187," suggests that it does reasonably apply where, as here, there is a change in the law reducing the maximum number of years a person found incompetent to stand trial may be committed. We conclude the matter is not ripe for our consideration.

Defendant asks us to issue an advisory opinion as to whether the amendment in the law should apply to him *if* he is still committed two years after his initial commitment; we decline to do so. When defendant filed his appeal, he had not yet reached two years in a treatment facility. And the record before us does not reveal whether defendant remains committed at this time. It is certainly possible defendant's competence has been restored or that a determination has been made that he is not substantially likely to regain competence, at which point, depending on the circumstances, the court might initiate conservatorship proceedings (§§ 1370, subd. (b)(1) & (c)(2)) or dismiss the charges (§§ 1370, subd. (d), 1385). Thus, whether Senate Bill 1187's change to the maximum term of commitment applies to or affects defendant is entirely speculative at this point and, thus, not ripe for our consideration. Rather, if defendant is to remain committed beyond his two-year anniversary of commitment, he may raise the issue of Senate Bill 1187's potential impact on his maximum term of commitment for consideration at that time in the trial court in the first instance.

Effectively here, because we are remanding on other grounds, defendant may raise the issue on remand should he be nearing or have passed the two-year anniversary of his commitment date. To hold otherwise would require us to adjudicate a hypothetical claim, which we are not authorized to do. (*People v. Slayton* (2001) 26 Cal.4th 1076, 1084 ["As a general rule, we do not issue advisory opinions indicating "'what the law would be upon a hypothetical state of facts"'"]; *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [ripeness doctrine "is rooted in the fundamental concept

12.

that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes"]; see *People v. Chadd* (1981) 28 Cal.3d 739, 746 ["We will not … adjudicate hypothetical claims or render purely advisory opinions"].)

## III. Defendant Is Not Entitled to Remand Based on Alleged Typographical Errors in His Competency Evaluation

Here, before proceeding with the section 1368 hearing, the court confirmed the parties were in receipt of Dr. Willis's report. Defense counsel confirmed receipt, made no objection to the report, and both parties submitted on the report. Based upon the report, the court found defendant not competent to stand trial and ordered a section 1370 placement report.

Defendant now contends for the first time that Dr. Willis's report, "contains a facial error involving confidential information," namely an incorrect date of birth for defendant and inclusion of a Fresno Superior Court case number not associated with defendant. He contends the facially erroneous information violates his right to an accurate record on appeal. Additionally, he argues, because the court relied on the section 1368 report in concluding he was incompetent, that finding was not supported by substantial evidence because the trial court could have relied upon another person's data in rendering its conclusion. The People argue defendant has failed to establish he was prejudiced by the alleged inaccuracies in Dr. Willis's report. In his reply brief, defendant concedes he has not demonstrated prejudice, arguing remand is required to determine whether the data is accurate, and whether he was prejudiced.

Because defendant failed to raise his challenge to the accuracy of Dr. Willis's report below, any objection to the use of Dr. Willis's report as a basis for the determination of incompetency has been forfeited. (See Evid. Code, § 353, subd. (a) ["A

13.

… finding shall not be set aside … or decision based thereon be reversed, by reason of the erroneous admission of evidence unless [¶] … [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; *In re Crystal J*. (1993) 12 Cal.App.4th 407, 411–413 [concluding objection related to alleged improper or inadequate evidence in assessment report waived on appeal for failure to object below].)

Irrespective, "[a] criminal defendant is entitled under the Eighth and Fourteenth Amendments to an appellate record that is adequate to permit meaningful review." (*People v. Young* (2005) 34 Cal.4th 1149, 1170.) But "[a]n appellate record is inadequate 'only if the complained-of deficiency is prejudicial to the defendant's ability to prosecute his appeal.'" (*Ibid.*) As the complaining party, a defendant bears the burden of showing deficiencies in the record are prejudicial. (*Ibid*.) "Inconsequential inaccuracies or omissions are insufficient to demonstrate prejudice." (*Ibid.*)

And here, as the People note and defendant concedes, he has failed to establish prejudice. Rather, the appellate record is adequate for us to reach the merits of defendant's claims and to conclude substantial evidence supports the trial court's finding of incompetence. Though defendant asserts the minor inaccuracies in Dr. Willis's report could be prejudicial because they may be indicative of further inaccuracy, such assertions amount to nothing more than speculation, which is insufficient to establish prejudice. (See *People v. Young*, *supra*, 34 Cal.4th at p. 1170.) Accordingly, we cannot conclude defendant is entitled to a remand for a hearing on the issue.

We reject defendant's final contention.

## DISPOSITION

With reference to the trial court's order authorizing involuntary administration of antipsychotic medication, the matter is remanded for further proceedings to conduct a new hearing on that issue, if and only if appropriate to the then-current status of the case. At such hearing, the court is directed to vacate its prior order, permit the parties to

introduce additional evidence, and determine whether, under the criteria in *Sell v. United States*, *supra*, 539 U.S. 166 and/or section 1370, antipsychotic medication should be involuntarily administered to defendant.  At such new hearing, if defendant has not regained competency and remains in custody under his initial commitment to the state hospital for a period of two years or longer, defendant may make a motion seeking retroactive application of Senate Bill 1187.  We express no opinion on whether such a motion, if made, should be granted or denied.  In all other respects, the order of commitment is affirmed.

PEÑA, J.

WE CONCUR:


FRANSON, Acting P.J.


SNAUFFER, J.

15.